## CUTLER HAMMER CO. v. PAWLING & HARNISCHFEGER CO. et al.

(Circuit Court of Appeals, Second Circuit. June 9, 1920.)

No. 242.

**Patents** ⊚══328—1,096,485, for electric switch, valid and infringed.

The Barnum patent, No. 1.096,485, for an electric switch, *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Cutler Hammer Company against Pawling & Harnischfeger Company and Isaac G. Johnson & Co., Incorporated, for infringement of patent No. 1,096,485. Decree for complainant, and defendants appeal. Affirmed.

Leverett C. Wheeler, of Milwaukee, Wis., and C. C. Billings, of New York City, for appellants.

Edwin B. H. Tower, Jr., of Milwaukee, Wis., and Wylie C. Margeson, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Appellee sued on patent No. 1,096,485, granted May 12, 1914, for an improvement in an electric switch. The appellee was the assignee of T. E. Barnum. The appellant Pawling & Harnischfeger Company is the manufacturer, and Isaac G. Johnson & Co. (a corporation), is the user, of the switch in question. Claims 1, 2, and 3 of the patent are in suit, and provide as follows:

1. In an electric switch, in combination a support, a contact finger, having at one end an open pivotal bearing on said support, and having at its other end a contact, a pin mounted on said support, and extending through said contact finger intermediate its ends, and a coil spring surrounding said pin and bearing upon said contact finger, to hold the latter in engagement with said support and permit movement of said contact.

2. In an electric switch, in combination, a support, a contact finger having at one end an open pivotal bearing on said support, and having at its other end a contact, a pin mounted on said support, and extending through said contact finger intermediate its ends, and a coil spring surrounding said pin and bearing upon said contact finger to hold the latter in engagement with said support and permit movement of said contact, said support having an extension to limit the movement of said contact finger in one direction.

⊚══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. In an electric switch, in combination, a support, a contact finger having at one end an open pivotal bearing on said support, and having at its other end a contact piece, a pin mounted on said support and extending through said contact finger intermediate its ends, a coil spring surrounding said pin, and pressing upon said contact finger, to hold the latter in engagement with said support, and adjustable means on said contact finger to limit the movement of the same in one direction.

The District Judge found the patent valid as to claims 1 to 4, and held claims 1, 2, and 3 infringed.

The patented switch, as applied to drum controllers, was placed on the market in 1910, and the appellant Pawling & Harnischfeger Company purchased and used the appellee's drum controller. The invention is said by the inventor to be particularly applicable to drum controllers. Although applicable for other purposes, the patented switch may be applied to a drum controller, as illustrated in the drawings of the patent. The drum controller comprises a rotable drum and stationary contacts arranged alongside the same and mounted upon a base. The contact segments have different lengths, and may be arranged in various ways around the drum, so as to engage the stationary contacts according to the sequence required. The contact segments are carried by radial arms, which dispose them cylindrically. The contact comprises a support and a pivoted finger. An open pivotal bearing is provided, so that the contact, as a whole, may have minimum width and a finger readily removable therefrom. The contact is pressed inwardly by a coiled spring, arranged upon the outside of the finger, and carried upon a pin which is mounted upon the support. The finger's normal inward position is determined by the stop, and this position may be adjusted by means of a screw. There is a flexible conducting lead, which carries the current from the support to the finger. The finger has a tip, which is engaged by the segment. This tip has the same curvature on both sides.

The advantages obtained by this combination of elements have brought the patented contact into extensive commercial use. With the spring, the lead, and the finger exposed outside, they are readily accessible. The open pivotal bearing enables the finger to be withdrawn, and applied after the lead and spring are disconnected, without difficult manipulation, and without withdrawing the pivot pin laterally. The result is that the contact has a minimum width, so that more may be placed in a given space than pivotal contacts which have bearings arranged alongside the finger or have a pivot pin which has to be moved sideways. It results that many more contacts can be arranged in half the space required by a contact which has a closed pivotal bearing and requires the pivot pin to be removed or inserted laterally. The finger is rigid, so that it will not bend. The spring does not carry current, so it does not become heated and lose its resiliency; it is not necessary that the spring have conductivity, and other materials may be used for resiliency. It guards against a short circuit, if the spring breaks, because the pin and pivot keep it in position, so that it does not become displaced, and therefore come in contact with other electrical parts.

The contacts may be arranged close together, as the open pivotal bearings allow it to be readily removed and applied; the lead and spring are outside and accessible.

The appellants' controller, in which its fingers are employed, is substantially the same as appellee's drum controller. The appellants' contacts are substantially the same as the appellee's contacts, comprising a support and a pivotal finger; the spring and lead are both outside the finger and are readily accessible. An open pivotal bearing is provided, so that the finger may be removed and applied readily when the lead and spring are disconnected. The spring and pivot do not carry current. The tip has substantially the same inclination on both sides. The pivotal bearing and tip face are arranged substantially in a line tangential to the point at which the tip face engages the drum segment. The appellants' open pivotal bearing is formed by a triangular projection on which the finger rests. The finger is kept from moving sideways by the retaining pin, which projects through a hole in the finger; such pin being arranged alongside the triangular projection from the semispherical projection.

Appellants' claim is that the triangular projection has the bearing faces thereof formed to provide a point contact, so that the finger may tilt crosswise to allow the tip face to adjust itself to the contact segment. The appellee's finger may likewise tilt crosswise, and enable the tip face to adjust itself to the contact segment. Infringement is not avoided under the claim of pivotal bearing, as the appellants' is an open pivotal bearing and performs the same function as the appellee's open pivotal bearing. They are the same in substance. The appellee's projection shown in the patent is mounted upon the finger, instead of the support, as in appellants' contact, and the groove provided to prevent lateral movement, instead of a pin. The appellants' contact has substantially the same elements, which co-operate in substantially the same way, and produce substantially the same result. We do not think that this is avoided on account of a pin pivotal bearing. The open pivotal bearing, as that term is used, must be considered according to the function of the bearings and the use made thereof.

Nor do we think that anything disclosed by the prior art anticipated the appellee's invention. The patent to Gale, No. 771,239, October 4, 1914, and the publication of Die Hebezeuge, are the chief reliance of the appellants as the prior art. The patent and publication do not disclose a pivoted switch contact. They do not embody the same structure, nor attain the same end, as a pivotal contact. The Gale patent is not a pivoted contact, nor a controller contact. The clips do not pivot, but are kept parallel, so as to engage the sides of the switch blades. The spring enables the clips to adjust themselves against the switch blades. The structure could not be modified, so as to adapt it to a controller. The clips may be readily removable. The springs are not accessible, as they are located beneath the finger, and cannot be readily reached through space between contacts. The spring carries current, which tends to heat the same and make it lose its resiliency. If the spring breaks, the spring and finger may be displaced, and cause a short circuit.

Other patents of the prior art were received in evidence, but an examination of each does not reveal a combination of elements, such as the appellee has gotten together to produce, and which has accomplished new and useful results in the art.

Decree affirmed.